

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 18, 2022

**VIA ECF AND EMAIL**

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:  *United States v. James Jeremy Barbera*, 21 Cr. 154 (JGK)

Dear Judge Koeltl:

      The Government respectfully submits this letter to provide the Court with additional information relevant to the Government's motion to admit evidence of the defendant's 2014 settlement of an SEC complaint alleging that he violated the antifraud provisions of the federal securities laws by making materially false and misleading statements about the business operations and finances of his former company (the "SEC Evidence").  Since the Government filed its motions *in limine*, the Government has developed the following additional evidence demonstrating that the SEC Evidence is inextricably intertwined with the charged offenses, and therefore should be admitted at trial.

      <u>First</u>, the Government has developed evidence demonstrating that Barbera was well aware that his previous SEC case was impeding his ability to work with financial institutions and raise capital for Nanobeak from institutional investors at the same time that he was making bullish, but false, statements to prospective individual investors about Nanobeak's valuation, capital raising successes, and supposedly planned IPO.  For example:

- In 2015, the president of an investment firm ("Firm-1") informed Barbera that a group of investors had been "highly interested . . . but your SEC issue caused them to move away," and that Firm-1 could not move ahead with an introduction to another investment fund so long as Barbera remained Nanobeak's CEO.

- In 2016, Barbera explained in an email to a consultant helping to raise capital for Nanobeak ("Consultant-1") that Barbera's "SEC issue was raised by the . . . compliance people" at a global wealth management firm ("Firm-2") and that this was "why nothing has happened" with Firm-2.

- In or about 2018, Consultant-1 introduced Barbera to an investment bank ("Firm-3").  The Government learned from Consultant-1 that Firm-3 was not interested in Nanobeak because of Barbera's SEC case.

- In December 2019, following Barbera's resignation as Nanobeak's CEO, a member of Nanobeak's board of directors wrote to other board members that Barbera's "SEC infraction" had been the "main issue" that impeded raising money for the company.

At the same time that the SEC case was impeding Barbera's ability to raise institutional capital, he repeatedly falsely conveyed to prospective individual investors, in substance, that Nanobeak was on the cusp of an IPO and/or obtaining a large institutional investment. Barbera did not disclose the existence of the SEC case or the impediments it was presenting to Nanobeak's fundraising efforts to these individual investors. As one example, Investor-RF invested in Nanobeak in 2016 in part because Barbera had told him that the company's share price would, supposedly, be increasing one week later due to an institutional investment purportedly coming in at a higher valuation, and that Nanobeak planned an IPO. Investor-RF did not find out about Barbera's SEC case until 2019, when Investor-RF learned through a friend's Google search that the SEC had barred Barbera for life from serving as the CEO of a public company. This information concerned Investor-RF, who felt that banks capable of handling an IPO would not want to be associated with Barbera. In fact, Investor-RF is expected to testify that he would not have invested in Nanobeak had he known about Barbera's SEC case and that the revelation about the SEC case led him to ask Barbera additional questions about Nanobeak's IPO in a telephone call that he recorded at the FBI's request. Accordingly, the SEC Evidence is relevant to showing Barbera's motive and lack of good faith, and provides context that is inextricably intertwined with the anticipated testimony of investors, such as Investor-RF.

Second, while Barbera often concealed his prior SEC case from prospective Nanobeak investors, he also made false and misleading representations when confronted. As noted in the Government's opposition brief to the defendant's motions *in limine* (Dkt. 79 at 5), in June 2019, Barbera stated to one investor ("Investor-RW") that Barbera would "continue to run" the company following an IPO the following year, which was false because in 2014 the SEC had permanently barred Barbera from serving as the officer or director of a public company. The Government has learned that, after Investor-RW's initial investment, Barbera solicited him for additional funds. Investor-RW discovered through his own research that Barbera had a previous issue with the SEC. When confronted, Barbera told Investor-RW, in substance, that the SEC case had been completely adjudicated, and that Barbera had been absolved of all responsibility. This was false because the SEC, in fact, had charged Barbera with violating the antifraud provisions of the federal securities laws, and Barbera had settled the charges without admitting or denying wrongdoing.

These and similar examples illustrate that it is not possible to disentangle the SEC Evidence from the charged fraud, because Barbera made false or misleading statements about the SEC case in his efforts to raise capital for Nanobeak and because consideration of facts relating to Barbera's SEC case informed the investment decisions of certain investors. Indeed, the Government expects multiple Nanobeak investors to testify that, had they known of the SEC settlement prior to their investment, they would have either invested less or not all, in part because the information would have impacted their assessment of Barbera's representations regarding Nanobeak's IPO.

     For the foregoing reasons and those set forth in the Government's prior submissions (Dkt. 74, 79), the Government respectfully requests that the Court admit the SEC Evidence.

                        Respectfully submitted,

                        DAMIAN WILLIAMS
                        United States Attorney

by: \_\_\_/s/_____
     Kiersten A. Fletcher / Daniel Loss
     Assistant United States Attorneys
     212-637-2238 / -6527

cc: Defense counsel