UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

UNITED STATES OF AMERICA

       - against -

JAMES JEREMY BARBERA,

                 Defendant.
————————————————————————————

21-cr-154 (JGK)

MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, District Judge:

    Following a jury trial, the defendant, James Jeremy Barbera, was convicted of conspiracy to commit securities fraud and wire fraud in violation of 18 U.S.C. § 371; securities fraud in violation of 15 U.S.C. §§ 78j (b) and 78ff, 17 CFR § 240.10b-5, and 18 U.S.C. § 2; and wire fraud in violation of 18 U.S.C. §§ 1343 and 2. At sentencing on May 4, 2023, the Court deferred issuing an order of restitution to allow the parties to discuss an appropriate order of restitution. On July 7, 2023, the Government sought an order of restitution in the amount of $6,926,150, which was the amount of forfeiture ordered by the Court ($7,026,150) less the amount associated with one investor ($100,000).[1] The defendant responded by letter dated August 7, 2023, ECF No. 217, that the amount of restitution should be zero, primarily because the Government allegedly had not shown that the losses of investors were proximately caused by the defendant's fraud. The government responded by letter dated

———————————————

[1] The Government did not seek restitution for one investor who invested $100,000 because the Court found the evidence with respect to that investor to be insufficient.

August 25, 2023, ECF No. 219, that the Court should order the defendant to pay restitution in the amount of $6,926,150. The Government has sought an appropriate amount of restitution.[2]

## I.

As a result of his conviction under 18 U.S.C. § 1343, the Mandatory Victims Restitution Act ("MVRA") requires the defendant to make restitution to the victims of his offense. 18 U.S.C. § 3663A(c)(1)(A)(ii)(mandatory restitution applies to an "offense against property under this title, . . . including any offense committed by fraud or deceit").[3] Any dispute as to the proper amount of restitution must be determined by a preponderance of the evidence. 18 U.S.C. § 3664(e). A district court has "broad discretion to determine restitution" and need only make a "reasonable estimate" of the actual loss "based on the evidence before it." United States v. Milstein, 481 F.3d 132, 137 (2d Cir. 2007).

---

[2] The Court appreciates that restitution is to be determined within 90 days of sentencing. See 18 US.C. § 3664(d)(5). However, the slight delay in this case was occasioned by the timing of the parties' submissions. See Dolan v. United States, 560 U.S. 605, 611 (2010) ("The fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution."); United States v. Avenatti, No. 21-1778, --- F.4th---, 2023 WL 5597835, at *24-25(2d Cir. Aug. 30, 2023)(the district court did not lack authority to enter a restitution order outside the 90-day period).

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

Under the MVRA, a court "shall order. . . that the defendant make restitution to the victim of [an] offense," including for any offense against property committed by fraud or deceit. 18 U.S.C. § § 3663A(a)(1), (c)(1)(A)(ii). A "victim" under this statute is a "person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2).

The MVRA requires restitution where a defendant's offense was a cause in fact and a proximate cause of a victim's loss. See United States v. Goodrich, 12 F.4th 219, 229 (2d Cir. 2021). The cause-in-fact requirement is satisfied if the defendant's conduct was a but-for cause of the injury or loss, meaning the conduct was "a necessary factor in bringing about the victim's harm." Id. (citing United States v. Marino, 654 F.3d 310, 322 (2d Cir. 2011)).

Proximate causation "is a flexible concept that generally refers to the basic requirement that there must be some direct relation between the injury asserted and the injurious conduct alleged." Paroline v. United States, 572 U.S. 434, 444 (2014). The key inquiry "is whether the harm alleged has a sufficiently close connection to the conduct, which [is] evaluate[d] based on whether that harm was foreseeable to a defendant." Goodrich, 12 F.4th at 229; see also Marino, 654 F.3d at 323-24 (finding the proximate cause standard to be met where the record was sufficient to suggest that the defendant could have foreseen the

3

extent of losses that the fraudulent scheme was incurring). "[A]
given proximate cause need not be, and frequently is not, the
exclusive proximate cause of harm." Sosa v. Alvarez-Machin, 542
U.S. 692, 704 (2004); see also Staub v. Proctor Hosp., 562 U.S.
411, 420 (2011) ("[I]t is common for injuries to have multiple
proximate causes.").

## II.

This Court already rejected the defendant's argument that
the Government failed to prove that the defendant proximately
caused the losses to investors, which were the basis for this
Court's determination at sentencing of the actual losses to
investors for purposes of the Sentencing Guidelines calculations
and the amount of forfeiture. The defendant made numerous
misrepresentations to investors concerning his credentials, the
breathalyzer device that was his company's alleged significant
invention, the asserted imminence of the initial public offering
("IPO"), and the use of company funds. The investors relied on
those representations, purchased stock in Nanobeak, and lost all
their invested funds. In determining the amount of loss at the
time of sentencing, the Court rejected the defendant's argument
that the Government has not "demonstrated that [the defendant's]
fraudulent representations were either the proximate or but-for
cause of the investors' losses." Sentencing Tr. 8:25-9:1. The
defendant's misrepresentations caused the investors to invest by
misrepresenting the prospects of Nanonbeak including its

management and technology, and the losses were foreseeable to the defendant because the defendant knew the representations were false and that he caused the investments.

As the Court observed at sentencing, in investment fraud cases such as this one, where a defendant fraudulently induces victims to invest, courts have found an appropriate measure of loss to be the amount that the defendant induced the victims to invest, less anything the victims received in return. See, e.g., United States v. Hsu, 669 F.3d 112, 121 (2d Cir. 2012); United States v. Byors, 586 F.3d 222, 226 (2d Cir. 2009); United States v. Stitsky, 536 F. App'x 98, 112 (2d Cir. 2013). Although the cases on which the Court relied for this proposition were decided in the context of calculating the applicable loss for Guidelines purposes, the proximate cause standard is the same. Compare U.S.S.G. § 2B1.1 cmt. n.3(A)(i) (defining "actual loss" for Guidelines purposes as the "reasonably foreseeable pecuniary harm that resulted from the offense"), with Goodrich, 12 F.4th at 229 ("Regarding proximate cause . . . the basic question . . . is whether the harm alleged has a sufficiently close connection to the conduct, which we evaluate based on whether that harm was foreseeable to a defendant.").

### III.

The defendant argues that there were intervening causes that arose after he left Nanobeak—including COVID—that broke the chain of proximate cause. The defendant points out that he was

removed as CEO in October 2019 and Nanobeak only filed for
bankruptcy in December 2021. But the misrepresentations by the
defendant caused investors to part with nearly $7 million in
investments based on misrepresentations that concerned the value
of the company and its technology which were never cured, and
the defendant personally misappropriated more than $3 million of
those funds. Tr. 5:8-6:22; See United States v. Barbera, No. 21
Cr. 154, 2022 WL 3157116, at *2 (S.D.N.Y. Aug. 5, 2022). As the
Court of Appeals explained, losses should not be offset by
changed economic circumstances because investors would not have
suffered such losses if they were not fraudulently induced to
invest in the first instance. United States v. Stitsky, 536 F.
App'x 98, 112 (2d Cir. 2013).

While the defendant points to the disclosures about
potential risks that were made to investors, that is simply an
effort to quarrel with the jury's verdict. The general
disclosures did not negate the specific misrepresentations that
the defendant made to investors to induce them to invest.

There is a clear "direct relation" between the "injury
asserted" by investors who suffered losses and the defendant's
"injurious conduct." Paroline v. United States, 572 U.S. 434,
444 (2014); United States v. Stitsky, 536 F. App'x at 111
(affirming district court's calculation loss of investors' full
investment "because there was no realistic possibility that [the

6

company] would be able to generate a positive return for investor" following the fraud).

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The Government has established by more than a preponderance of the evidence that the defendant is liable for restitution in the amount of $ 6,926,150. Based on the defendant's financial condition as reflected in the Presentence Report, ECF No. 153, this Court will impose a payment schedule for restitution in the amount of 15% of the defendant's gross monthly income beginning 30 days after the defendant's release from incarceration. Interest will not accrue on the restitution amount because of the defendant's inability to pay the full restitution award.

**SO ORDERED.**

Dated:     New York, New York
           September 18, 2023

                                    John G. Koeltl
                              United States District Judge

7